**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| HELEN YANSICK, | No. EDCV 03-949 (CW) |
| Plaintiff, | DECISION AND ORDER |
| v. | |
| JO ANNE B. BARNHART, Commissioner, Social Security Administration, | |
| Defendant. | |

The parties have consented, under 28 U.S.C. § 636(c), to the jurisdiction of the undersigned Magistrate Judge.  Plaintiff seeks review of the Commissioner's denial of disability benefits.  As discussed below, the court finds that the Commissioner's decision should be reversed and this matter remanded for further proceedings.

**I. BACKGROUND**

Plaintiff Helen Yansick was born on October 16, 1971, and was thirty years old at the time of her administrative hearing. [Administrative Record "AR" 15.]  She has a high school education and past relevant work experience as a housekeeper, waitress and nanny.

[Id.]  Plaintiff claims disability on the basis of hepatitis C., diarrhea, depression and pain in her right leg.[1]  [Id.]

## II.  PROCEEDINGS IN THIS COURT

Plaintiff's complaint was lodged on August 20, 2003, and filed on August 27, 2003.  On January 6, 2004, defendant filed plaintiff's Administrative Record ("AR").  On April 30, 2004, the parties filed their Joint Stipulation ("JS") identifying matters not in dispute, issues in dispute, the positions of the parties, and the relief sought by each party.  This matter has been taken under submission without oral argument.

## III.  PRIOR ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for supplemental security income (SSI) on September 25, 2000, alleging disability since August 10, 2000.  [JS 2.]  The application was denied on January 24, 2001, and reconsideration was denied on April 10, 2001. [Id.]  An administrative hearing was held on March 27, 2002, before Administrative Law Judge ("ALJ") Gerald M. Etchingham.  [Transcript, AR 15.]  Plaintiff appeared with counsel, and testimony was taken from plaintiff, medical expert Samuel Landau, and vocational expert Sandra Fioretti.  [AR 23.]  The ALJ denied benefits on April 23, 2002.  [Decision, AR 20.]  When the Appeals Council denied review on June 24, 2003, the ALJ's decision became the Commissioner's final decision.  [AR 4.]

## IV.  STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The Commissioner's (or

---

[1] The leg injury occurred when plaintiff fell while water skiing in August 1996, and it was exacerbated when she fell down a flight of stairs in February 1997. [AR 167, 181.]

ALJ's) findings and decision should be upheld if they are free of legal error and supported by substantial evidence. However, if the court determines that a finding is based on legal error or is not supported by substantial evidence in the record, the court may reject the finding and set aside the decision to deny benefits. See Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001); Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995)(per curiam).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, a court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Id. "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720-721; see also Osenbrock, 240 F.3d at 1162.

### V. DISCUSSION

#### A. THE FIVE-STEP EVALUATION

To be eligible for disability benefits a claimant must demonstrate a medically determinable impairment which prevents the claimant from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least twelve months. Tackett, 180 F.3d at 1098; Reddick, 157 F.3d at

721; 42 U.S.C. § 423(d)(1)(A).

Disability claims are evaluated using a five-step test:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996); see also Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987); Tackett, 180 F.3d at 1098-99; 20 C.F.R. § 404.1520, § 416.920. If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete further steps. Tackett, 180 F.3d 1098; 20 C.F.R. § 404.1520.

Claimants have the burden of proof at steps one through four, subject to the presumption that Social Security hearings are non-adversarial, and to the Commissioner's affirmative duty to assist claimants in fully developing the record even if they are represented by counsel. Tackett, 180 F.3d at 1098 and n.3; Smolen, 80 F.3d at 1288. If this burden is met, a prima facie case of disability is made, and the burden shifts to the Commissioner (at step five) to

prove that, considering residual functional capacity ("RFC")[2], age, education, and work experience, a claimant can perform other work which is available in significant numbers. Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. § 404.1520, § 416.920.

**B. THE ALJ'S EVALUATION IN PLAINTIFF'S CASE**

In plaintiff's case, the ALJ found that plaintiff had not engaged in substantial gainful activity since the claimed onset date of August 10, 2000 (step one) and that plaintiff had "severe" impairments, namely hepatitis A and C, arthritis in her right knee, and depression (step two). [AR 16, 19.] The ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled a "listing" (step three). [AR 19.] The ALJ found that plaintiff did not have the RFC to perform her past relevant work (step four) but that she could still perform a limited range of light work,[3] including jobs as a surveillance system monitor and telephone solicitor (step five).

---

[2] Residual functional capacity measures what a claimant can still do despite existing "exertional" (strength-related) and "nonexertional" limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n.s. 5-6 (9th Cir. 1989). Nonexertional limitations limit ability to work without directly limiting strength, and include mental, sensory, postural, manipulative, and environmental limitations. Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993); Cooper, 800 F.2d at 1155 n.7; 20 C.F.R. § 404.1569a(c)). Pain may be either an exertional or a nonexertional limitation. Penny, 2 F.3d at 959; Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985); 20 C.F.R. § 404.1569a(c)).

[3] The ALJ found that plaintiff had the RFC for a limited range of light work, including the ability to lift and/or carry up to twenty pounds occasionally and ten pounds frequently, sit six hours out of a given eight hour period, stand and/or walk four hours out of a given eight hour period on level ground and no more than occasional bending and stooping. [AR 16.] Plaintiff was precluded from work requiring the climbing of ropes, ladders and scaffolds, ramps or stairs; kneeling; balancing; work exposing her to extreme temperature changes; work at unprotected heights; work around dangerous, unguarded, moving machinery; or driving. [Id.] Plaintiff also required an air-conditioned work environment. [Id.]

[Id.]  Thus, the ALJ found that plaintiff was not "disabled" as defined by the Social Security Act. [Id.]

### C. PLAINTIFF'S PRESENT CLAIMS

Plaintiff challenges the ALJ's decision by contending, among other things,[4] that the ALJ failed to credit the opinion of her treating physician, Dr. Joseph Nevarez. [JS 11.]  As discussed below, this contention has merit and requires remand for further proceedings.

### D. THE TREATING PHYSICIAN'S OPINION

Ninth Circuit cases distinguish among the opinions of three types of physicians: those who treat the claimant (treating physicians), those who examine but do not treat the claimant (examining or consultative physicians), and those who neither examine nor treat the claimant (non-examining physicians).  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  The opinion of a treating physician is given deference because he is employed to cure and has a greater opportunity to know and observe the patient as an individual.  Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987).  The opinion of the treating physician, however, is not necessarily conclusive as to either physical condition or the ultimate issue of disability.  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989), Rodriguez v. Bowen, 876 F.2d 759, 761-62 & n.7 (9th Cir. 1989).

"'The administrative law judge is not bound by the uncontroverted opinions of the claimant's physicians on the ultimate issue of disability, but he cannot reject them without presenting clear and convincing reasons for doing so.'"  Reddick, 157 F.3d at 725. (quoting Matthews v. Shalala, 10 F.3d 678, 780 (9th Cir. 1993)(quoting Montijo

---

[4] Plaintiff also argues that the ALJ failed to identify alternative occupations within her RFC. [JS 3.]

6

v. Secretary of Health & Human Servs., 729 F.2d 599, 601 (9th Cir. 1984).  Even if a treating physician's opinion on disability is controverted, it can be rejected only with specific and legitimate reasons supported by substantial evidence in the record.  Lester, 81 F.3d at 830.  See also Benecke v. Barnhart, 379 F.3d 587, 591 & n.1 (9th Cir. 2004).

   Here, Dr. Nevarez's treatment of plaintiff began in October 1998 and lasted sporadically until March 2002. [AR 196, 219, 328.]  In an undated letter to the Department of Social Services, Dr. Nevarez described plaintiff's history of hepatitis C, knee pain and depression. [AR 196.]  Dr. Nevarez stated that plaintiff had complained of fatigue, distractability, poor concentration, weakness, pain and limited mobility and that "I would support a claim for disability." [Id.]  However, Dr. Neverez also stated in the letter that plaintiff's "workup is in progress" and that he would "defer to GI Medicine...and psychiatry" for opinions about plaintiff's hepatitis and depression. [Id.]

   The ALJ rejected Dr. Nevarez's statements in the letter, finding that plaintiff's complaints were "entirely unsupported by the medical evidence of record." [AR 18.]  The ALJ also found it "mystifying" that Dr. Nevarez would support plaintiff's disability claim even though her workup was still in progress and he would defer to the opinions of other specialists regarding her specific conditions. [Id.]  The ALJ concluded that Dr. Nevarez's opinion had "absolutely no probative value." [Id.]

   However, the ALJ's characterization of the record is not fully accurate.  It is not the case that plaintiff's complaints were "entirely unsupported" by the medical evidence.  Medical expert Landau

7

testified that plaintiff's depression would explain her chronic fatigue. [AR 30, 32.]  Dr. Mitchell Geiger, plaintiff's orthopedic surgeon, diagnosed her with a probable malunion of the right distal femur and right knee pain. [AR 251.]  Subsequently, Dr. Geiger performed arthroscopic surgery on the knee and concluded plaintiff was a reasonable candidate for a high tibial osteotomy for valgus alignment [AR 293, 295.]  Dr. John Meek, a state agency review physician, signed a report stating that plaintiff had right knee pain and ongoing fatigue and appeared credible. [AR 275-276.]

In rejecting the opinion of Dr. Nevarez, the ALJ cited the contrary opinions of medical expert Landau and Dr. Stuart Brodsky, who each concluded that plaintiff was physically capable of working. [AR 16.]  The ALJ appears to have mistakenly referred to Dr. Brodsky as a consultative medical examiner, while the record shows that he is a non-examining state agency physician. [AR 302.]  The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of a treating physician. Lester, 81 F.3d 830-31.  The administrative record does not contain an opinion of an examining physician who assessed plaintiff's physical impairments.[5]  Upon remand, it may be necessary to obtain such an opinion.

The second record addressing Dr. Nevarez's treatment of plaintiff is a physical RFC questionnaire that Dr. Nevarez completed in March 2002. [AR 328.]  In the questionnaire, Dr. Nevarez assessed very strict limitations, including findings that plaintiff could sit and

---

[5] The record does contain the opinion of an examining psychiatrist, Dr. Reynaldo Abejuela, who concluded that plaintiff was not severely impaired from a psychiatric standpoint. [AR 17.]

stand/walk for less than two hours in an eight-hour workday, that she would need to take unscheduled breaks lasting one to two hours, and that she would be absent from work more than four times per month. [AR 330, 332.]  On the other hand, Dr. Nevarez stated that he was "unsure" whether plaintiff is a malingerer or whether her impairments would last at least twelve months. [AR 329.]  He also noted that some of his responses about plaintiff's limitations were "per patient." [Id.]

It is unclear whether the ALJ considered Dr. Nevarez's RFC assessment because it is not mentioned at all in the opinion. Instead, the ALJ adopted the RFC assessments of Dr. Landau and, to a lesser extent, Dr. Brodsky[6] to conclude that plaintiff was capable of performing a limited range of light work [AR 16.]  By failing to address Dr. Nevarez's RFC assessment, the ALJ failed to provide specific and legitimate reasons to discount it.  Lester, 81 F.3d at 830; see also Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991)(Substantial evidence does not support ALJ's rejection of treating physician's opinion when he entirely ignores medical reports and fails to mention them in his opinion).

Because the ALJ failed to provide specific and legitimate reasons supported by substantial evidence in the record to reject Dr. Nevarez's opinion, it should be credited as true.  Benecke, 379 F.3d at 592.  However, even if Dr. Nevarez's opinion is credited, it is not clear that plaintiff must be found to be disabled.  Dr. Nevarez opined that plaintiff would miss at least four days of work per month, which

---

[6] Dr. Brodsky's RFC assessment was less restrictive in terms of standing, walking, climbing and kneeling than the ALJ's. [AR 16, 278, 279.]

9

might indicate that plaintiff would be incapable of working.[7] [AR 332.] On the other hand, Dr. Nevarez remained equivocal about plaintiff's limitations, stating that he would "defer to GI Medicine...and Psychiatry" for opinions regarding plaintiff's hepatitis C and depression. [AR 196.] He also stated he was "unsure" about whether plaintiff was a malingerer and whether her impairments would last at least twelve months. [AR 329.] Upon viewing Dr. Nevarez's opinion as a whole, questions remain about what his opinion means for plaintiff's ability to work. Accordingly, even if his opinion is credited as true, a remand for an award of benefits would be inappropriate. Connett v. Barnhart, 340 F.3d 871, 875 (9th Cir. 2003)(court has flexibility with respect to crediting treating physician's opinion if there are outstanding issues to be resolved before a disability determination can be made).

### E. REMAND FOR FURTHER PROCEEDINGS

The decision whether to remand for further proceedings is within the discretion of the district court. Harman v. Apfel, 211 F.3d 1172, 1175-1178 (9th Cir. 2000). Where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. Id.

Here, as discussed above, there are outstanding issues to be resolved regarding plaintiff's ability to work. Clarification from Dr. Nevarez regarding his opinion about plaintiff's impairments may be

---

[7] VE Fioretti testified that plaintiff's prospective employers would tolerate a maximum of only one to two absences per month. [AR 66.]

required. It may also be appropriate to obtain the opinion of an examining physician to assess plaintiff's physical limitations. Such opinions should be taken into account when assessing whether plaintiff has the RFC to make a vocational adjustment to work that is available in significant numbers.[8]

## VI. ORDERS

Accordingly, **IT IS ORDERED** that:

1. The decision of the Commissioner is **REVERSED**.

2. This action is **REMANDED** to defendant, pursuant to Sentence Four of 42 U.S.C. § 405(g), for further proceedings as discussed above.

3. The Clerk of the Court shall serve this Decision and Order and the Judgment herein on all parties or counsel.

DATED: November 7, 2005

/s/ Carla M. Woehrle
CARLA M. WOEHRLE
United States Magistrate Judge

---

[8] An additional issue that plaintiff raises is whether the ALJ properly determined that she had the mental capacity to make a vocational adjustment to jobs designated by VE Fioretti, such as surveillance system monitor or telephone solicitor. [JS 4.] The government designates both occupations with "Reasoning Level 3," which requires the ability to carry out instructions furnished in written, oral, or diagrammatic form and the ability to deal with problems involving several concrete variables in or from standardized situations. U.S. Dep't of Labor, Dictionary of Occupational Titles, 1011 (4th ed. 1991). Plaintiff argues that such requirements exceed the ALJ's finding that she could perform only "simple and repetitive" work. [JS 5.] See, e.g., Allen v. Barnhart, 2003 WL 22159050 *10 (N.D. Cal. 2003)(ALJ's limitation of plaintiff to "simple, routine tasks" precluded jobs at Reasoning Level 2 or higher). Upon remand, plaintiff's ability to perform the cited jobs should be considered.